1  GIBSON, DUNN & CRUTCHER LLP
   JAMES P. FOGELMAN, SBN 161584
2  jfogelman@gibsondunn.com
   ALAYNA MONROE, SBN 329061
3  amonroe@gibsondunn.com
   2029 Century Park East, Ste. 4000
4  Los Angeles, CA 90067
5  Telephone: 310.552.8500
   Facsimile: 310.551.8741
6
   KATHERINE V.A. SMITH, SBN 247866
7  ksmith@gibsondunn.com
   333 South Grand Avenue
8  Los Angeles, CA 90071
   Tel.: 213.229.7000
9  Fac.: 213.229.7520

10 *Attorneys for Defendant DraftKings Inc.*

11

12

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                          WESTERN DIVISION

16

17 | Michael Z. Hermalyn and FVP, LLC, | CASE NO. 2:24-cv-00918-MCS
                                        | CASE NO. 2:24-cv-00997-MCS
18 |                    Plaintiffs,     |
                                        | **DEFENDANT'S OPPOSITION TO**
19 |        v.                          | **PLAINTIFFS' MOTION FOR FEES**
20 | DraftKings, Inc.                   | [*Filed concurrently with
                                        | Declaration of Katherine V.A. Smith*]
21 |                    Defendant.      |
                                        | Hearing Date: March 11, 2024
22 |                                    | Time: 9:00 a.m.
23 |                                    | Judge: Hon. Mark C. Scarsi
                                        | Courtroom: 7C
24 |                                    | Trial Date: None Set

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 7

II.    BACKGROUND ................................................................................................. 8

III.    ARGUMENT ..................................................................................................... 10

    A.    DraftKings' removals were objectively reasonable. ................................ 10

        1.    DraftKings' first removal was objectively reasonable in relying on the complaint to allege complete diversity .................. 11

        2.    DraftKings' second removal was objectively reasonable because it was not foreclosed by any precedent binding on this Court .................................................................................... 15

    B.    Plaintiffs' claimed attorney's fees are unreasonable. ............................. 19

IV.    CONCLUSION ................................................................................................. 25

Gibson, Dunn & Crutcher LLP

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR FEES

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Abrams v. Olin Corp.*,
248 F.R.D. 283 (S.D. Ala. 2007) ...................................................................17

*Ag Navigator, LLC v. Top Gun Ag LLC*,
2020 WL 4435426 (D. Neb. Aug. 3, 2020) .................................................13

*Apilado v. Bank of America*,
2019 WL 4039616 (D. Haw. Aug. 27, 2019) ...............................................16

*Attorneys Trust v. Videotape Computer Prod.*,
93 F.3d 593 (9th Cir. 1996)..........................................................................18

*Bartlett v. CitiBank N.A.*,
2018 WL 1178326 (N.D. Cal. Mar. 7, 2018) ...............................................23

*Becerra v. McClatchy Co.*,
2009 WL 1514472 (E.D. Cal. May 27, 2009) ..............................................16

*Cavallini v. State Farm Mut. Auto Ins. Co.*,
44 F.3d 256 (5th Cir. 1995)..........................................................................16

*Collins Ave. Assocs., LLC v. Turner Constr. Co.*,
2008 WL 11408486 (S.D. Fla. Mar. 3, 2008) ..............................................12

*Eminence Invs., L.L.L.P. v. Bank of N.Y. Mellon*,
24 F. Supp. 3d 968 (E.D. Cal. 2014).............................................................14

*Fowler v. Fever Labs Inc.*,
2021 WL 183318 (C.D. Cal. Jan. 15, 2021) ................................................19

*Gardner v. UICI*,
508 F.3d 559 (9th Cir. 2007).................................................................11, 19

*Gee v. Signature Retail Servs., Inc.*,
2021 WL 754448 (C.D. Cal. Feb. 26, 2021) ................................................19

*Gens v. Ferrell*,
2005 WL 3536112 (N.D. Cal. Dec. 22, 2005) .............................................20

*In re Girardi*,
611 F.3d 1027 (9th Cir. 2010).......................................................................16

*Grancare, LLC v. Thrower by & through Mills*,
889 F.3d 543 (9th Cir. 2018).........................................................................15

*Gress v. Bergin*,
2023 WL 397034 (C.D. Cal. Jan. 24, 2023) ................................................19

*Haggett v. Hill*,
2019 WL 12359430 (C.D. Cal. June 25, 2019) ...........................................21

Gibson, Dunn &
Crutcher LLP

*Harris v. Bankers Life & Casualty Co.*,
425 F.3d 689 (9th Cir. 2005)................................................................13

*Hawkins v. Biotronk, Inc.*,
2017 WL 838650 (C.D. Cal. Mar. 3, 2017) ........................................17

*Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*,
2022 WL 870206 (N.D. Ga. Feb. 22, 2022) ........................................24

*Hearden v. Windsor Redding Care Ctr., LLC*,
2023 WL 2159887 (E.D. Cal. Feb. 22, 2023) ......................................22

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................20

*Hermalyn v. DraftKings, Inc.*,
No. 24STCV02694 (L.A. Super. Ct. Feb. 7, 2024) ............................10

*Intershoe v. Filanto S.P.A*,
97 F. Supp. 2d 471 (S.D.N.Y. 2000)..............................................17, 18

*JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*,
127 F. Supp. 2d 700 (D. Md. 2001) ....................................................13

*Johnson v. Columbia Properties Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006)...............................................................12

*Kenny v. Wal-Mart Stores, Inc.*,
881 F.3d 786 (9th Cir. 2018)...............................................................14

*Kirkbride v. Cont'l Cas. Co.*,
933 F.2d 729 (9th Cir. 1991)...............................................................15

*Kral v. J Choo USA, Inc.*,
2024 WL 472511 (C.D. Cal. Feb. 7, 2024)..........................................15

*Ladies Memorial Ass'n Inc. v. City of Pensacola, Fla.*,
662 F. Supp. 3d 1212 (N.D. Fla. 2023).................................................11

*Lee v. Winebright Warner LLC*,
2021 WL 12171827 (C.D. Cal. Apr. 13, 2021) ....................................24

*Lis v. Koninklijke Philips N.V.*,
2024 WL 549060 (W.D.N.Y. Feb. 12, 2024) .......................................17

*Littlestone, LC. v. Chauvin*,
2019 WL 4722436 (E.D. Va. Sept. 26, 2019).......................................13

*Lopez v. Allied Packing & Supply Inc.*,
2016 WL 3068392 (N.D. Cal. June 1, 2016) .....................................8, 18

*Lussier v. Dollar Tree Stores, Inc.*,
518 F.3d 1062 (9th Cir. 2008).............................................................10

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005)..........................................................10, 11, 12, 19

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR FEES

Gibson, Dunn &
Crutcher LLP

*Miller v. Grgurich*,
   763 F.2d 372 (9th Cir. 1985)................................................................................11

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001)........................................................................16, 17

*Overrated Prods., Inc. v. Universal Music Grp.*,
   2019 WL 6729718 (C.D. Cal. July 31, 2019) ...................................................18

*Pham v. Watts*,
   2014 WL 4748274 (N.D. Cal. Sept. 24, 2014) .................................................23

*Pililian v. CVS Pharmacy, Inc.*,
   2024 WL 324898 (C.D. Cal. Jan. 23, 2024) .....................................................19

*ProMed Cap. Venture, LLC v. Deerfield Beach Outpatient Surgical Ctr., LLC*,
   2024 WL 580792 (D. Nev. Feb. 13, 2024) .......................................................12

*Ramirez v. Quad Graphics, Inc.*,
   2023 WL 3254979 (C.D. Cal. May 4, 2023) .....................................................19

*Rosas v. BMW of N. Am., LLC*,
   2020 WL 1131024 (C.D. Cal. Mar. 6, 2020) ....................................................19

*Ross v. United Airlines, Inc.*,
   2022 WL 1302680 (C.D. Cal. Apr. 30, 2022) ..................................................19

*Sell v. Cabral*,
   2020 WL 3577874 (C.D. Cal. June 30, 2020) ..................................................21

*Singh v. 7-Eleven, Inc.*,
   2021 WL 4899022 (C.D. Cal. July 21, 2021) ..................................................24

*Stanko v. Stanko*,
   2023 WL 1778335 (C.D. Cal. Feb. 6, 2023) ....................................................19

*Sweet v. United Parcel Serv., Inc.*,
   2009 WL 1664644 (C.D. Cal. Jun 15, 2009) ...................................................15

*Toxic Injuries Corp. v. Safety-Kleen Corp.*,
   57 F. Supp. 2d 947 (C.D. Cal. 1999) ...............................................................17

*TPCO US Holding, LLC v. Fussell*,
   2023 WL 5111986 (N.D. Cal. Aug. 9, 2023)..............................................20, 24

*Villegas v. Hyattseville Mgmt. LLC*,
   2015 WL 13917556 (C.D. Cal. Apr. 1, 2015) ..................................................24

*Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*,
   416 F. Supp. 2d 1081 (D. Kan. 2006) ..............................................................15

**Rules**

Local Rule 7-11..................................................................................................10

Local Rule 7-19..................................................................................................21

Gibson, Dunn & Crutcher LLP

5

Local Rule 7-19.1.................................................................................................21

Local Rule 83-1.3.1..............................................................................................22

# I.    INTRODUCTION

Plaintiffs Michael Z. Hermalyn and FVP, LLC's (also known as "Fanatics VIP") motion for attorney's fees should be denied.  After filing two motions to remand over seven days in federal court, Plaintiffs request a whopping ***$310,604*** in attorney's fees. That amount is not reasonable.

This Court should not award any fees because DraftKings Inc. had an objectively reasonable basis for seeking removal each time.  DraftKings initially alleged complete diversity based on Plaintiffs' *own state court Complaint*, which pleaded that Fanatics VIP is "a limited liability company formed in *California*, with headquarters in Los Angeles, *California*," a "*California*-based affiliate of the global digital sports platform Fanatics Holdings, Inc.," and "a *California* company."  No. 2:24-cv-00918, Dkt. 1-3, ¶¶ 13, 16, 24 (emphases added).  The fact that Plaintiffs ensured that Fanatics VIP's sole member was a Nevada corporation—which DraftKings did not learn until after removal—does not make DraftKings' reliance on the complaint objectively unreasonable.

After the case was remanded to state court, DraftKings learned that Fanatics VIP and its purported Nevada member had been formed just one day before the first removal. As a result, DraftKings had another objectively reasonable basis for seeking removal based on the doctrines of fraudulent joinder and sham plaintiff.  The Ninth Circuit may not have squarely recognized plaintiff-side fraudulent joinder, but it has not rejected it either, and it was objectively reasonable for DraftKings to make its argument.  Although DraftKings did not persuade this Court that Fanatics VIP was a sham plaintiff that had been fraudulently created and joined solely to defeat diversity jurisdiction, the supporting facts it alleged were well within the bounds of reason, as well as legal precedent.

If there were any doubt, Plaintiffs' own request for attorney's fees confirms that no fees are warranted.  After all, no reasonable law firm would incur—and no reasonable client would pay—more than $300,000 for a handful of days' work to seek remand of

an objectively ***unreasonable*** removal (or even two).  *See Lopez v. Allied Packing & Supply Inc.*, 2016 WL 3068392, at *2 (N.D. Cal. June 1, 2016) ("[T]he amount of fees sought here undercuts Plaintiffs' argument that [defendant's] removal position was without merit.").

But if this Court concludes otherwise and decides to award fees, it should dramatically reduce Plaintiffs' exorbitant fee request, which is orders of magnitude higher than fees typically awarded on remand by courts in this District.  Plaintiffs' request seeks reimbursement for hours of tasks that have nothing to do with removal (*e.g.*, research for substantive motions practice), that they knew were unnecessary (*e.g.*, hearing preparation after learning that there are no hearings on *ex parte* applications, and drafting reply briefs, when no reply briefs were authorized and DraftKings had not even filed an opposition to reply to), and that are obviously inflated (*e.g.*, filing a 10-page mini-brief titled "Notice of Related Case").  And, somehow, all but one of the attorneys from Munger Tolles spent more than 17 hours—one as many as 50 hours—working on the first removal ***even though only 17 hours elapsed between removal and the filing of Plaintiffs' remand motion***.  The extent of the inflation is impossible to calculate because Plaintiffs lump together all time each attorney billed for each removal as a whole without specific time entries related to discrete tasks, meaning that Plaintiffs have not carried their burden to substantiate the reasonableness of their fees.

This Court should deny Plaintiffs' request for attorney's fees.  But if it grants any fees, it should drastically reduce the amount.

## II.      BACKGROUND

Former DraftKings executive Michael Hermalyn entered into a brazen scheme to steal and use confidential information, solicit customers and employees, and join a key competitor, Fanatics, Inc.  In his role as the head of VIP for DraftKings, Hermalyn accessed and received some of DraftKings' most valuable trade secrets and other confidential information, including comprehensive DraftKings' strategies for identifying loyal customers and points of contact with DraftKings' critical business

partners.  No. 2:24-cv-00997, Dkt. 1-1, ¶¶ 5–8.  By January 2024, as Hermalyn made arrangements to jump ship from DraftKings to Fanatics in coordination with the Fanatics leadership team, he helped himself to some of DraftKings' most critical business documents on his way out the door.  *Id.* ¶¶ 10–11.

On February 1, 2024, Hermalyn tendered his resignation from DraftKings and announced that he was taking on a new role leading Fanatics' Los Angeles office.  No. 2:24-cv-00997, Dkt. 1-3, ¶ 21.  That same day, Hermalyn and Fanatics VIP filed a 26-page lawsuit—prepared well in advance by two sophisticated large law firms—in California Superior Court in Los Angeles seeking to void Hermalyn's non-competition covenants on the ground that he is a California resident.  No. 2:24-cv-00997, Dkt. 1-9, at 1.  Plaintiffs' actions directly contravened the forum selection clauses in the agreements, which require adjudication of all disputes between Hermalyn and DraftKings in Boston, Massachusetts.  No. 2:24-cv-00918, Dkt. 1, at 7–8.

DraftKings removed the case to federal court that same night, on the basis of apparent diversity between the parties based on Plaintiffs' complaint.  No. 2:24-cv-00997, Dkt. 1, ¶ 2.  The next morning, Plaintiffs moved to remand the case *ex parte*.  *Id.* The Court granted remand on its own motion the following business day, Monday, February 5, citing Plaintiffs' representation that there lacked complete diversity because FVP, LLC's sole member (FVP, Inc.) is incorporated in Nevada, as is DraftKings.  *Id.* DraftKings, however, learned about FVP, Inc.—for the first time—in Plaintiffs' remand papers.  After learning about FVP, Inc., DraftKings uncovered records showing FVP, LLC *and* FVP, Inc. were formed just one day before commencing suit in California state court, and that Fanatics Holdings, Inc.—which DraftKings believed was the real party in interest—owned FVP, Inc.  *Id.* ¶¶ 22–24.  To DraftKings, this was a deliberate and improper attempt to defeat federal jurisdiction.

Because this Court remanded this matter *sua sponte*, DraftKings was unable to present the Court with the factual developments regarding the real parties at interest in the matter.  No. 2:24-cv-00918, Dkt. 14.  On the basis of this newly discovered

information, DraftKings removed the case to federal court again the night of February

5, 2024.  No. 2:24-cv-00997, Dkt. 1.  In so doing, DraftKings noted on the Civil Cover

Sheet that "this action [has] been previously filed in this court."  No. 24-cv-00997,

Dkt. 2.  DraftKings' notice of removal explained how Fanatics VIP—as Plaintiffs now

all but admit—"organiz[ed] itself to take advantage of favorable state law."  Motion for

Attorney's Fees ("Mot.") at 12, No. 2:24-cv-00918, Dkt. 16; No. 2:24-cv-00997 Dkt. 23

Plaintiffs filed an emergency *ex parte* application and emergency *ex parte* motion to

remand.  No. 24-cv-00997, Dkt. 8, 9.  DraftKings opposed both emergency applications

on the merits and procedurally, as Local Rule 77-1 allows only for emergency filings

"for a temporary restraining order."  Local Rule 7-11.  While these motions were

pending, Plaintiffs filed a "Conditional Notice of Intent to Apply Ex Parte" in state court,

which was struck both because the state court had no jurisdiction over the application

and because there is "no authority that" conditional notice "is appropriate."  *See*

Declaration of Katherine V.A. Smith, Ex. A (*Hermalyn v. DraftKings, Inc.*, No.

24STCV02694 (L.A. Super. Ct. Feb. 7, 2024) (order striking Plaintiffs' notice)).  This

Court remanded on its own motion on February 8, 2024.  No. 2:24-cv-00997, Dkt. 19.

After the second remand, Plaintiffs filed an *ex parte* application for TRO on

February 13, 2024, but it was cancelled due to a procedural error at the courthouse.

Despite bemoaning their need for "immediate relief in state court," Mot. 21, Plaintiffs

still have not re-filed an *ex parte* in state court.

## III.    ARGUMENT

### A.    DraftKings' removals were objectively reasonable.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c)

only where the removing party lacked an *objectively reasonable* basis for seeking

removal."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

And "removal is not objectively unreasonable solely because the removing party's

arguments lack merit, or else attorney's fees would always be awarded whenever remand

is granted."  *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

Thus, "whether a removal is improper is not dispositive in determining whether fees should be awarded under 28 U.S.C. § 1447(c)." *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007).

To the contrary, the fee-shifting provision in § 1447(c) allows defendants to remove cases to federal court even where the basis for removal is not "obvious." *Martin*, 546 U.S. at 140. "Nothing in the law requires . . . self-censoring of arguments by attorneys. For good reason. It is the job of attorneys to make arguments, and it is the job of judges to decide if the arguments are winners or losers." *Ladies Memorial Ass'n Inc. v. City of Pensacola, Fla.*, 662 F. Supp. 3d 1212, 1218 (N.D. Fla. 2023).

### 1. DraftKings' first removal was objectively reasonable in relying on the complaint to allege complete diversity.

This Court initially remanded this case because DraftKings "offer[ed] insufficient allegations about the citizenship of [Fanatics VIP]," which turned out to be a citizen of Nevada. No. 24-cv-00918, Dkt. 14, at 2. But DraftKings had an objectively reasonable basis at the time of removal for concluding that Fanatics VIP was instead a citizen of California, and Plaintiffs' arguments to the contrary lack merit.

As an initial matter, "[t]he diversity upon which removal is predicated . . . should generally be determined *from the face of the complaint*." *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985) (emphasis added). And the complaint here tied Fanatics VIP to California over and over again. For example, the complaint alleged that "Plaintiff Fanatics VIP is a limited liability company formed in *California*, with headquarters in Los Angeles, *California*." No. 24-cv-00918, Dkt. 1-3, ¶ 13 (emphases added). "Fanatics VIP," it proclaimed "is a *California*-based affiliated of the global digital sports platform Fanatics Holdings, Inc." *Id.* (emphasis added); *see also id.* ¶ 16 ("Fanatics VIP is a limited liability company formed in California, with headquarters in Los Angeles, California. And, according to the complaint, "Fanatics VIP is a *California* company." *Id.* ¶ 24 (emphasis added).

Gibson, Dunn & Crutcher LLP

True, the state where an LLC is formed, headquartered, based, and carries out the bulk of its business is not the test of citizenship for diversity purposes. Rather, an LLC "is a citizen of every state of which its owners/members are citizens," *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), and DraftKings' notice of removal did not allege the citizenship of Fanatics VIP's member(s), *see* No. 24-cv-00918, Dkt. 1, at 9. But a mere "failure to satisfy the jurisdictional burden of proof does not automatically trigger a right to collect attorney's fees." *Collins Ave. Assocs., LLC v. Turner Constr. Co.*, 2008 WL 11408486, at *2 (S.D. Fla. Mar. 3, 2008); *see also ProMed Cap. Venture, LLC v. Deerfield Beach Outpatient Surgical Ctr., LLC*, 2024 WL 580792, at *1 (D. Nev. Feb. 13, 2024) (denying fees despite mistaken allegation regarding citizenship of LLC "based on what defendant knew and believed at the time it removed"). And nothing in the complaint even hinted that Fanatics VIP had any members who were citizens of Nevada; DraftKings learned that only *after* it removed, through a declaration form the Chief Legal Officer at Fanatics Holdings, Inc. *See* No. 24-cv-00097, Dkt. 1, at 12-14.

Here, as in *Collins Avenue*, "Plaintiff[s] admit[] that [they] did not fully allege its citizenship in [their] state court complaint (i.e. the citizenship of each of the members of the LLC), which might have been useful in avoiding an improper removal." 2008 WL 11408486, at *2 (reaffirming denial of request for attorney's fees under § 1447(c)); *see* Mot. 8 ("Plaintiffs' complaint did not include any allegations about the citizenship of Fanatics VIP."). And their complaint used "Fanatics VIP" and "Fanatics"—defined to include "Fanatics Holdings, Inc."—interchangeably throughout. *See, e.g.*, No. 24-cv-00918, Dkt. 1, ¶¶ 1, 12, 13, 26. And although Plaintiffs may not have been required to allege Fanatics VIP's citizenship for purposes of their state-court complaint, their "failure to disclose facts necessary to determine jurisdiction" cuts *against* awarding "attorney's fees." *Martin*, 546 U.S. at 141.

Stripped of rhetoric, Plaintiffs' argument boils down to the notion that DraftKings should have "conduct[ed] an investigation," either "independently or by seeking

discovery," before its initial removal. Mot. 8. But that argument misstates the law and ignores the facts. In *Ag Navigator, LLC v. Top Gun Ag LLC*, for example, the court denied attorney's fees even though "the defendants' Notice of Removal d[id] not show they . . . performed *any* due diligence regarding member-citizenship for any of the LLCs." 2020 WL 4435426, at *2–3 (D. Neb. Aug. 3, 2020) (quotation marks omitted); *see also JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F. Supp. 2d 700, 702 (D. Md. 2001) (denying attorney's fees where it was "disputed" whether "Plaintiff's full corporate structure information was made available to the Defendant for its determination of Plaintiff's citizenship").[1]

Plaintiffs' lack-of-investigation theory is based upon a supposed "bright-line rule from" *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689 (9th Cir. 2005). *See* Mot. 8–11. But *Harris* did not even consider attorney's fees. Rather, *Harris* addressed a timeliness question—*i.e.*, whether a defendant must remove within 30 days after receiving an initial pleading where "no ground for removal is evident." 425 F.3d at 694. And the court concluded that the defendant does *not* have a "duty to make further inquiry" to prevent waiving their ability to remove. *Id.*

In any event, DraftKings could not have readily discerned the membership of Fanatics VIP. After all, an LLC's membership is not publicly available information. Fanatics VIP's articles of incorporation reveal only its principal address in Los Angeles and that it will be managed by "All LLC Member(s)." No. 24-cv-00997, Dkt. 1-14, at 2. And Plaintiffs' counsel repeatedly refused to provide any documentation to support its assertion that one of Fanatics VIP's members was a citizen of Nevada.[2] *See* No. 24-

---

[1] Even when a defendant LLC impermissibly removes because it does not know the citizenship of *its own* members, fees are not necessarily appropriate. *See Littlestone, LC. v. Chauvin*, 2019 WL 4722436, at *5–6 (E.D. Va. Sept. 26, 2019).

[2] To the contrary, Plaintiffs' counsel was deliberately misleading in this regard. Shortly after DraftKings filed the first removal, Hermalyn's attorneys emailed DraftKings asking that DraftKings stipulate to remand because "[o]ne of FVP, LLC's members is a Nevada citizen," further noting "[i]f you need more information, please let me know asap." No. 2:24-cv-00997, Dkt. 1-13, at 11. But when Plaintiffs filed their remand motion later that day, the supporting Declaration of Fanatics' Chief Legal Officer, Gregg Winiarski, stated that FVP, LLC has ***just one*** member. No. 2:24-cv-00997, Dkt. 1-18,

*(Cont'd on next page)*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR FEES

Gibson, Dunn & Crutcher LLP

cv-00997, Dkt. 1-13, at 3–10.  Under the circumstances, there was nothing objectively unreasonable about removing based on the California-centered allegations of the complaint.

Moreover, there is nothing remotely unreasonable about removing "mere hours after receiving the complaint and Mr. Hermalyn's ex parte papers."  Mot. 3.  To the contrary, Plaintiffs' untimely and procedurally improper request for emergency relief in state court *necessitated* quick action:  Plaintiffs did not send a file stamped-copy of their complaint until nearly 5:00 p.m.—and did not send their *ex parte* TRO papers until 6:34 p.m.—even though they were attempting to notice a hearing for the next morning at 8:30 a.m.[3]  No. 24-cv-00997, Dkt. 1-13, at 5.  Had removal been proper, as DraftKings believed, DraftKings was entitled to have *this Court* decide Plaintiff's motion for emergency relief and to avoid potentially conflicting rulings on the same motion, and it had no time to delay.  After all, removals are subject to time limits precisely "to prevent a defendant from waiting to see how things go in the state court before deciding whether to try his luck in a federal forum and also to avoid the delay and waste involved in starting the case over in a new court after substantial time and energy has been spent on litigating it in state court."  *Eminence Invs., L.L.L.P. v. Bank of N.Y. Mellon*, 24 F. Supp. 3d 968, 975 (E.D. Cal. 2014).  Indeed, if DraftKings *had* waited until after it opposed Plaintiffs' TRO in state court, Plaintiffs might well have argued that DraftKings waived its right to a federal forum.  *See Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 790 (9th Cir. 2018) ("[T]he right of removal is not lost by action in the state court *short* of proceeding to an adjudication on the merits." (emphasis added)).  It is Plaintiffs' belated request for emergency relief that necessitated such a quick removal—DraftKings had

---

¶¶ 6, 7.  And despite DraftKings asking repeatedly for "more information" about FVP, LLC and its member(s), none was provided.  No. 2:24-cv-00997, Dkt. 1-13, at 7.  In light of this record, it is clear that any attempt to "investigate" Plaintiffs' citizenship would have been futile, if not counterproductive.

[3] Plaintiffs' counsel later informed DraftKings that, in fact, Plaintiffs' *ex parte* papers had been rejected by the state court because they were (as DraftKings repeatedly told counsel) filed too late.  No. 2:24-cv-00997, Dkt. 1-13, at 5.

Gibson, Dunn &
Crutcher LLP

only hours after receiving Plaintiffs' complaint and *ex parte* papers to take action to get this case into (what it believed in good faith was) the proper court.

## 2. DraftKings' second removal was objectively reasonable because it was not foreclosed by any precedent binding on this Court.

DraftKings' decision to remove a second time was not *per se* objectively unreasonable. A second removal is permitted "when subsequent pleadings or events reveal a *new* and *different* ground for removal." *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991). "Where a court has previously remanded a removed action for a defendant's failure to meet its burden, successive notices of removal . . . generally must be based on information not available at the prior removal." *Sweet v. United Parcel Serv., Inc.*, 2009 WL 1664644, at *3 (C.D. Cal. June 15, 2009).

Here, as DraftKings explained in its second removal notice, "it d[id] not approach re-removal lightly," but, since the first removal, "critical information ha[d] come to DraftKings' attention" that raised fraudulent joinder questions. No. 2:24-cv-00997, Dkt. 1, at 5. Plaintiffs themselves conceded that the second removal was on a different basis. *See* No. 2:24-cv-00997, Dkt. 9, at 5.

DraftKings' removed the second time on the basis of fraudulent joinder and because Fanatics VIP was a sham company, formed one day before Plaintiffs filed suit in a transparent attempt to defeat federal jurisdiction. *See* No. 2:24-cv-00997, Dkt. 1, at 5. While fraudulent joinder has traditionally applied to joinder of improper defendants, *see, e.g.*, *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018), "[t]here is some clear authority outside this jurisdiction that fraudulent joinder may apply to plaintiffs," *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1090 (D. Kan. 2006). The fact that the "doctrine has not [yet] been extended in the Ninth Circuit to purportedly fraudulently joined plaintiffs," Mot. 11, means that it was objectively *reasonable* for DraftKings to argue for its extension. *See Kral v. J Choo USA, Inc.*, 2024 WL 472511, at *3 (C.D. Cal. Feb. 7, 2024) (when a defendant "provide[s] reasonable argument and legal authority to support

its position," that "position [is] objectively reasonable," even if the "Court ultimately disagrees"). An argument "is not per se unreasonable" when "no decision from the United States Supreme Court or the Ninth Circuit has clearly precluded [a defendant's] position." *Becerra v. McClatchy Co.*, 2009 WL 1514472, at *5 (E.D. Cal. May 27, 2009). And, as Plaintiffs own case notes, "[t]he Ninth Circuit has not adopted the [plaintiff-side fraudulent joinder] doctrine, but *neither has it foreclosed it*." *Apilado v. Bank of America*, 2019 WL 4039616, at *6 (D. Haw. Aug. 27, 2019) (emphasis added) (declining to award fees on that basis).

Moreover, "[i]t is blackletter law that 'the defendant is entitled to present facts showing the joinder to be fraudulent.'" *In re Girardi*, 611 F.3d 1027, 1066 n.51 (9th Cir. 2010) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)). In other words, "[f]raudulent joinder claims may be resolved by piercing the pleadings and considering summary judgment-type evidence such affidavits and deposition testimony." *Morris*, 236 F.3d at 1068 (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (internal quotation marks omitted)).

This is exactly what DraftKings attempted to do in its second removal. DraftKings pleaded allegations, grounded in declarations, publicly available corporate records, and Plaintiffs' own complaint, that Fanatics VIP was set up for the sole purpose of defeating diversity jurisdiction. *See* No. 2:24-cv-00997, Dkt. 1, ¶¶ 33–37. DraftKings cited evidence—not just allegations—that FVP, LLC was formed one day before Plaintiffs' lawsuit was filed; its sole Nevada member was also formed one day before Plaintiffs' lawsuit was filed; the sole Nevada member is wholly owned by Fanatics Holdings, Inc.—the true competitor to DraftKings that stood to benefit from Hermalyn's hiring; and that FVP, LLC was entirely irrelevant to the dispute, since it was not a party to the contract or a moving party for Hermalyn's TRO.[4] No. 2:24-cv-00997,

---

[4] DraftKings also supplemented its removal papers with evidence that Hermalyn received his job offer from Michael Rubin, Chair and CEO of Fanatics Holdings, Inc., on January 27, 2024—four days before FVP, LLC even existed—and that, in his new role, he is "report[ing] directly to the Chair and CEO of Fanatics Holdings, Inc., Michael

*(Cont'd on next page)*

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR FEES

Gibson, Dunn &
Crutcher LLP

Dkt. 1, ¶¶ 22–24. Based on those allegations, DraftKings asked for discovery to ascertain whether Fanatics VIP fell within the ambit of fraudulent joinder or was a sham corporation. *See* No. 2:24-cv-00997, Dkt. 10, at 15–19. DraftKings believed—and continues to believe—that jurisdictional discovery would have shown that this was a fraud. An initial allegation, and request for the court to "consider[] summary judgment-type evidence such as affidavits and deposition testimony," fits squarely within established Ninth Circuit precedent for how a party should allege fraudulent joinder. *Morris*, 236 F.3d at 1068 (quotation marks omitted).

While the Court ultimately disagreed with DraftKings' arguments, DraftKings' "dispute[ of] the relevance and existence of certain facts" pleaded by Plaintiffs is enough to "conclude[] that [DraftKings] had an objectively reasonable basis for believing Plaintiff[s] might be attempting to fraudulently defeat diversity." *Hawkins v. Biotronk, Inc.*, 2017 WL 838650, at *4 (C.D. Cal. Mar. 3, 2017). "[T]o award costs and fees in this case would be tantamount to declaring that such an award is warranted in every case where the removing defendant[] fail[s] to meet [its] heavy burden of proving fraudulent joinder." *Abrams v. Olin Corp.*, 248 F.R.D. 283, 293 (S.D. Ala. 2007).

Additionally, there is no basis for fees "[i]n light of the subtleties involved in applying fraudulent joinder principles to non-diverse plaintiffs." *Lis v. Koninklijke Philips N.V.*, 2024 WL 549060, at *2 (W.D.N.Y. Feb. 12, 2024) (quotation marks omitted); *cf. Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947, 957–58 (C.D. Cal. 1999) (declining to award fees because the "case involved complicated issues"). For instance, in *Intershoe v. Filanto S.P.A.*, the defendants alleged that one of the plaintiffs had been fraudulently joined. 97 F. Supp. 2d 471, 472 (S.D.N.Y. 2000). The court noted that the defendants bore a "heavy burden" to show fraudulent joinder "by clear and convincing evidence, resolving all factual and legal issues in plaintiff's favor." *Id.* at 474 (quotation marks omitted). And it rejected defendants' fraudulent-

_____

Rubin, and ha[s] the opportunity to work alongside his executive team." No. 2:24-cv-00997, Dkt. 15, Ex. A ¶ 2.

joinder argument for multiple reasons, including that they "misconceive[d] the appropriate inquiry into fraudulent joinder of a plaintiff." *Id.* at 475. Nonetheless, the court declined to award fees. *Id.* at 476.

Furthermore, DraftKings did not rely exclusively on the doctrine of fraudulent joinder in its removal—it also alleged and argued that FVP, LLC was a sham plaintiff, a shell through which Fanatics Holdings, Inc. was attempting to litigate this case without creating federal diversity jurisdiction. Use of such a "strawman" plaintiff, DraftKings argued, was reason to ignore FVP, LLC's domicile for the purposes of evaluating diversity jurisdiction. *See Overrated Prods., Inc. v. Universal Music Grp.,* 2019 WL 6729718, at *7 (C.D. Cal. July 31, 2019) (where evidence revealed plaintiff corporation was assigned royalty rights so it "could initiate [the] suit," the company was a "strawman" and its "domicile [wa]s irrelevant for the purpose of establishing jurisdiction"); *Att'ys Tr. v. Videotape Comput. Prod.*, 93 F.3d 593, 598 (9th Cir. 1996) (courts need not "countenance destruction of jurisdiction by the use of straw parties," particularly where the result would deprive a party of the "forum to which [it] would otherwise be entitled" and the "jurisdiction which Congress conferred upon the federal courts [would be] manipulated"). The Court seemingly agreed that this "sham plaintiff" doctrine could apply in certain circumstances but disagreed that DraftKings had proffered sufficient evidence of fraud. *See* No. 24-cv-00997, Dkt. 19, at 2.

In any event, the time spent and "the amount of fees sought here undercut[] Plaintiffs' argument that [DraftKings'] removal position was without merit." *Lopez v. Allied Packing & Supply Inc.*, 2016 WL 3068392, at *2 (N.D. Cal. June 1, 2016). As detailed below, Plaintiffs' request for ***$310,604*** "is well above the amount of fees typically sought in connection with motions to remand, and thus suggests that the issues presented were not objectively unreasonable, otherwise there would be no need for Plaintiffs to incur so much attorney time in briefing the issues." *Id.* (citing cases where the fee requests were between $6,000 and $11,000).

\*    \*    \*

DraftKings acknowledges that the Court ultimately remanded this case to California state court. But "whether a removal is improper is not dispositive in determining whether fees should be awarded under 28 U.S.C. § 1447(c)." *Gardner*, 508 F.3d at 562. DraftKings had objectively reasonable bases for removal here. First, Plaintiffs' obfuscation of the various "Fanatics" entities in its complaint, plus the repeated allegations that Fanatics VIP was based in California, gave DraftKings ample reason to believe that FVP, LLC was a California citizen. Second, DraftKings, relying on a theory adopted by other courts and not foreclosed by the Ninth Circuit, attempted to plead plaintiff-side fraudulent joinder as well as sham plaintiff. Because these were both "objectively reasonable bas[e]s . . . , fees should be denied." *Martin*, 546 U.S. at 141.

## B.    Plaintiffs' claimed attorney's fees are unreasonable.

Even if the Court concludes that DraftKings lacked an objectively reasonable basis for removal, Plaintiffs' request for more than $300,000 in attorney's fees is not at all reasonable. *See Stanko v. Stanko*, 2023 WL 1778335, at *4 (C.D. Cal. Feb. 6, 2023) ("If the court finds a party is eligible for fees, the court must then determine what fees are reasonable.").

DraftKings is aware of **no** cases where any court in this District awarded fees even approaching this astronomical sum. To the contrary, courts in this District typically issue awards representing a mere fraction of that amount.[5] And Plaintiffs' motion fails to substantiate the time their attorneys purportedly spent in connection with the removal proceedings.

---

[5] *See, e.g.*, *Pililian v. CVS Pharmacy, Inc.*, 2024 WL 324898, at *2 (C.D. Cal. Jan. 23, 2024) (awarding $14,468 in attorney's fees pursuant to 28 U.S.C. § 1447(c)); *Gress v. Bergin*, 2023 WL 397034, at *3 (C.D. Cal. Jan. 24, 2023) ($6,825 in fees); *Ramirez v. Quad Graphics, Inc.*, 2023 WL 3254979, at *13 (C.D. Cal. May 4, 2023) ($7,600 in fees); *Ross v. United Airlines, Inc.*, 2022 WL 1302680, at *4 (C.D. Cal. Apr. 30, 2022) ($1,800 in fees); *Gee v. Signature Retail Servs., Inc.*, 2021 WL 754448, at *4 (C.D. Cal. Feb. 26, 2021) ($5,200 in fees); *Fowler v. Fever Labs Inc.*, 2021 WL 183318, at *3 (C.D. Cal. Jan. 15, 2021) ($8,260.50 in fees); *Rosas v. BMW of N. Am., LLC*, 2020 WL 1131024, at *3 (C.D. Cal. Mar. 6, 2020) ($3,000 in fees).

To begin with, fees sought under § 1447(c) must be limited to expenses "incurred *as a result of the removal*." 18 U.S.C. § 1447(c) (emphasis added). But Plaintiffs get to their bloated fee request by including scores of hours "unreasonably, unnecessarily, or inefficiently devoted to the case." *TPCO US Holding, LLC v. Fussell*, 2023 WL 5111986, at *3 (N.D. Cal. Aug. 9, 2023) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). For example:

- **Hours Not Caused By Removal.** Plaintiffs seek reimbursement of the hours that junior associates spent researching "issue[s] related to pursuing substantive relief in federal court in the event [Plaintiffs'] remand was denied." Declaration of Brad D. Brian at 8, 10–11, No. 2:24-cv-00918, Dkt. 16-1; No. 2:24-cv-00997 Dkt. 23-1 ("Brian Decl."). But courts specifically decline to issue fee awards for time spent on "additional work *caused* by removal," which is separate and apart from the work "associated directly" with removal and remand proceedings. *Gens v. Ferrell*, 2005 WL 3536112, at *4 (N.D. Cal. Dec. 22, 2005). Likewise, the time incurred from preparing and filing the first *ex parte* motion should not be recoverable, as this was, at most, "additional work *caused* by removal." *Id.*

- **Hearing Preparation.** It is well-established that this Court does not hold hearings on *ex parte* applications—as counsel for Plaintiff Michael Hermalyn confirmed with the Clerk before Plaintiffs' first remand motion was filed. *See* Declaration of Katherine V.A. Smith, Ex. B; *see also* No. 2:24-cv-00997, Dkt. 1-13, at 8–9 (counsel for Plaintiff Michael Hermalyn confirming in a different email that the Court's chambers "informed me that the Court does not hold hearings on ex partes"). Yet Plaintiffs' fee motion lists "preparing for a potential argument on the ex parte application" as recoverable time in connection with both removal actions. Mot. 18, 20; *see also* Brian Decl. at 8, 11 (describing time billed by a junior associate for revising and drafting "an oral argument outline in preparation for a

potential hearing" on Plaintiffs' *ex parte* applications). It is a mystery as to why Plaintiffs would expend time preparing for a hearing that was not going to happen, but regardless, Plaintiffs should not recover any of those fees. *See, e.g.*, *Sell v. Cabral*, 2020 WL 3577874, at *5 (C.D. Cal. June 30, 2020) (unreasonable to award fees for of "anticipated work for a hearing" when, in fact, "no hearing on the [m]otions will be held").

- **Reply Briefs.** This Court's Local Rules and Standing Orders do not provide for the filing of reply briefs in connection with emergency or *ex parte* motions. *See* Local Rule 7-19 & 7-19.1; No. 2:24-cv-00918, Dkt. 11, at 3 ("No replies in support of ex parte applications are authorized."). Yet Plaintiffs seek to recover for numerous hours preparing those reply briefs. Even stranger, it appears Plaintiffs spent many hours drafting a reply to DraftKings' opposition to their first remand motion—even though the Court remanded the case on its own motion ***before*** DraftKings was able to file that brief. Without an opposition brief to reply to, what were these attorneys doing? Fees should not be granted for drafts begun prematurely that were "never filed or considered by the Court." *Haggett v. Hill*, 2019 WL 12359430, at *5 (C.D. Cal. June 25, 2019). Thus, Plaintiffs' request for fees for time spent "researching and drafting a reply brief" is unreasonable. Mot. 18, 20.

- **Application for Emergency Relief**. Plaintiffs' application for "emergency relief" in connection with the second removal was similarly unreasonable. That request for *ex parte* relief was baseless and wholly improper at that stage, given Plaintiffs' misuse of the Local Rules and their complete failure to show any risk of irreparable harm. As DraftKings has explained at length in its initial opposition to these papers, No. 2:24-cv-00997, Dkt. 10, Plaintiffs' request for emergency relief was misplaced for two reasons. *First*, Local Rule 77-1 permits a party to obtain court action prior to the

next business day only in "exceedingly rare" cases via a temporary restraining order, which is materially different than an order to remand. If Plaintiffs wished to shorten time on their remand motion, they needed to obtain relief through an *ex parte* application under Local Rule 7-19. Instead, Plaintiffs incorrectly attempted to invoke 77-1. *Second*, there was no urgency justifying emergency relief. While Plaintiffs claimed they would suffer irreparable harm because DraftKings filed suit in Massachusetts, they failed to show why the Massachusetts court could not properly adjudicate the dispute.

- **Notice of Related Case**. Plaintiffs assert that they spent numerous hours drafting a ***10-page*** notice of related case, even though DraftKings had marked the second removal as an "identical case" on the civil cover sheet. *See* No. 24-cv-00997, Dkt. 2, at 3. Plaintiffs do not explain why it was necessary for them to file a notice of related case that same day—much less offer any justification for filing a mini-brief rather than the "brief factual statement" required by this Court's rules. Local Rule 83-1.3.1.

In addition, Plaintiffs' reported hours for time spent on other tasks are vague and inflated. For example:

- Plaintiffs' counsel claims to have spent an undefined amount of time on "internal correspondence and conferences regarding the strategy and substance of this response." Mot. 18, 20. Such vague descriptions are impermissible. *See Hearden v. Windsor Redding Care Ctr., LLC*, 2023 WL 2159887, at *1 (E.D. Cal. Feb. 22, 2023).

- Plaintiffs' fee motion also contains particular tasks which appear overstated in their complexity. *Compare* Brian Decl. (junior associate "responsible for drafting the corporate disclosure statement . . . which included extensive correspondence with counsel for co-Plaintiff Fanatics VIP") *with* No. 2:24-

cv-00997, Dkt. 7 (disclosure statement with one sentence about Fanatics VIP's corporate citizenship).

And, at a broader level, there is glaring mismatch between Plaintiffs' purported hours worked and the actual timeline of events in this action. **For instance, a mere 17 hours passed between DraftKings' first removal and the filing of Plaintiffs' first remand motion**. After that remand motion was filed, there was no need to incur *any* additional fees, given that (1) Plaintiffs were aware the Court would not hear argument on the *ex parte,* and thus there was no need to prepare for a hearing, and (2) reply briefs are not contemplated by the Court's local rules regarding *ex parte* motions, and regardless DraftKings was never able to file its Opposition to the *ex parte* motion and thus there was not yet anything to reply *to*. *At most*, after the filing of the remand motion, Plaintiffs could have incurred perhaps an hour of time preparing and filing the Notice of Interested Parties. Yet Plaintiffs' summary table of fees states that four of the five attorneys from Munger Tolles somehow spent *more than* 17 hours *each* on the first remand motion. Brian Decl., Ex. B. Of particular concern is Ms. Conley's 50-*plus* billable hours logged on the first removal. *Id.* Even assuming that Ms. Conley worked on responding to DraftKings' removal from the moment it was filed until Plaintiffs' remand motion was uploaded to PACER, that is at most 17 hours. Yet she claims to have worked another ***thirty-three*** hours—over the weekend—before the Court remanded the case on its own motion on Monday morning. Whatever Ms. Conley was doing for approximately 15 hours a day over that weekend, it was *not* preparing remand papers which had already been filed.[6]

Nor is it reasonable that Plaintiffs spent more than ***90*** hours over the course of four days on a second remand motion in the same case. *See Pham v. Watts*, 2014 WL 4748274, at *1 (N.D. Cal. Sept. 24, 2014) (finding "86.2 hours of work by two attorneys

---

[6] Alternatively, Ms. Conley's hours suggests that Plaintiffs' may have anticipated removal and begun preparing remand papers before DraftKings removed—or even before Plaintiffs filed their state complaint—which would only confirm that Plaintiffs knew removal was a possibility that they were trying to circumvent.

1   in support of remand and . . . their fee motion [] excessive by a wide margin.")); *Bartlett*
2   *v. CitiBank N.A.*, 2018 WL 1178326, at *2 (N.D. Cal. Mar. 7, 2018) (holding that it is
3   "unreasonable" for Plaintiff's attorney to spend an "additional 15 hours" on a new
4   motion for remand). That is particularly true since we know those hours included
5   drafting and improper emergency relief motion, a **ten-page** "notice of related case," and
6   multiple, impermissible reply briefs. *See supra* 21–22.

7         What is worse, Plaintiffs do not attempt to allocate their hours worked to any
8   specific or discrete tasks, but instead they lump together all hours each attorney worked
9   on either the first or the second removal motion. That makes it impossible to remove
10  Plaintiffs' unnecessary, inflated, and duplicative hours to determine how much they
11  reasonably incurred. For that reason alone, Plaintiffs have "failed to demonstrate that
12  the attorneys' fees requested are reasonable." *Singh v. 7-Eleven, Inc.*, 2021 WL
13  4899022, at *1 (C.D. Cal. July 21, 2021) ("Without a more detailed breakdown, the
14  Court cannot determine whether the time for any particular task is reasonable or whether
15  the total number of hours is reasonable."); *cf. Villegas v. Hyattseville Mgmt. LLC*, 2015
16  WL 13917556, at *3 (C.D. Cal. Apr. 1, 2015) (explaining that request that did "not
17  identify how much time was spent on the seven identified tasks" was "insufficient to
18  support an award of the requested fees").

19        Finally, "after any more precise subtractions," this Court can and should decrease
20  the lodestar by an appropriate amount. *Healthier Choices Mgmt. Corp. v. Philip Morris*
21  *USA, Inc.*, 2022 WL 870206, at *5 (N.D. Ga. Feb. 22, 2022), *rev'd in part*, *remanded in*
22  *part*, and *vacated in part* (vacating fee award entirely), 65 F.4th 667 (Fed Cir. 2023).
23  The Court should do so here, where a "multitude of attorneys" and multiple law firms
24  contributed, making it "difficult to tell" what work was "unnecessarily duplicative."
25  *TPCO US Holding, LLC v. Fussell*, 2023 WL 5111986, at *3 (N.D. Cal. Aug. 9, 2023)
26  (internal quotes omitted); *see also Lee v. Winebright Warner LLC*, 2021 WL 12171827,
27  at *4 (C.D. Cal. Apr. 13, 2021) (reducing requested fees by 75% where counsel's
28

"declaration identifie[d] several tasks that he completed but d[id] not indicate how much time was spent on each task").

## IV.    CONCLUSION

This Court should deny Plaintiffs' request for attorney's fees or, alternatively, decline to award Plaintiffs' manifestly unreasonable requested fees.

Dated:  February 20, 2024                    Respectfully submitted,

By:  */s/ James Fogelman*

James Fogelman, SBN 116927
Alayna Monroe, SBN 329061
GIBSON, DUNN & CRUTCHER LLP
jfogelman@gibsondunn.com
amonroe@gibsondunn.com
2029 Century Park East, Ste. 4000
Los Angeles, CA 90067
Telephone: 310.552.8500
Facsimile: 310.551.8741

Katherine V.A. Smith, SBN 283812
GIBSON, DUNN & CRUTCHER LLP
ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: 213.229.7000
Fac.: 213.229.7520

*Attorneys for Defendant DraftKings Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant DraftKings Inc., certifies that this brief contains 6,402 words, exclusive of captions, tables, signature blocks, and this certification, which complies with the word limit of L.R. 11-6.1.

By:  */s/ James Fogelman*
James Fogelman

Gibson, Dunn &
Crutcher LLP